TINDALL *v.* HUBBARD.

(Division B. Dec. 15, 1930.)

[131 So. 413. No. 29046.]

R. C. Russell, of Magee, and W. D. Hilton, of Mendenhall, for appellant.

J. P. and A. K. Edwards, of Mendenhall, for appellee.

Ethridge, P. J., delivered the opinion of the court.

Tindall was plaintiff in the court below and sued Hubbard upon an account amounting to three hundred seventy-three dollars and twenty-one cents. It appears that Tindall had leased and was operating a filling station in Magee, Mississippi, and that he was also representing the Texas Oil Company and selling gas and oils at wholesale in that territory. He had leased from a party a filling station known in the record as the Smith Filling Station, for which he paid a rental of seventy-five dollars per month. He had an employee operating this filling

station, but for some reason the employee abandoned his employment or contract, and Tindall took up with Hubbard the proposition of leasing to Hubbard the filling station. Tindall had a contract with the Texas Oil Company over a period of years, under which contract he would get a commission on the wholesale sales and would also get so much per gallon for the sales of gas and oils with the provision in the contract that if the sales amounted to a given amount he would get a rebate or reduction of ten per cent, and if they amounted to another specified quantity he would get a rebate or reduction of five per cent.

At first Hubbard refused to lease the filling station longer than one month, but after operating it one month, according to Hubbard's version of the affair, there was an agreement that he would operate it for an indefinite time with the provision that he could quit on giving one month's notice. Hubbard contended that at the end of about four months he made a contract in which he was to lease the property for a year's time and have all the incidents of the business. Tindall's version was substantially the same as Hubbard's, except he stated there was no contract for any specific time, or one year, and he stated that he (Tindall) was to have the rebate and was to buy the oil and gas for the filling station and sell it himself to Hubbard, and that Hubbard was only to get so much per gallon for the sales made; that Tindall was to pay the privilege tax; and that he was responsible to the Texas Oil Company for the gas and oil purchased. Hubbard had claimed the right to the commissions which amounted to three hundred five dollars and some cents, leaving a balance of sixty-seven dollars and ninety-nine cents, which he tendered by check to plaintiff, Tindall, as a settlement in full of the amount. Tindall refused to receive the check in full, but offered, in his pleadings, to accept the check as a credit on the account, and tendered the check with his declaration for such disposition as the court might order in reference to it.

There was certain testimony offered to the effect that it was the custom for the retail dealer to have the rebate allowed by the different companies having the same or similar contracts, but this was excluded by the court, and the issue submitted to the jury as to whether the agreement, which was verbal, was in accord with Hubbard's theory or in accord with Tindall's theory. The jury returned a verdict for the defendant.

For the plaintiff the court instructed the jury: "The court instructs the jury that unless you can say from all the evidence in the case that there was a contract between The Texas Oil Company and the defendant, W. B. Hubbard, or that George Tindall had assigned his contract with Texas Oil Company to Hubbard whereby he, Hubbard, was to get the bonus in controversy, then the said Hubbard cannot now claim same as an offset on the account sued on, and in such event it is your duty to find for plaintiff and this is true even though The Texas Oil Company gave Tindall credit for same." The court refused the instruction for the plaintiff that if the jury believed from the preponderance of the evidence that Tindall rented the Smith Filling Station to Hubbard by the month or for a year, and that the terms of the contract were that Tindall was to pay the privilege license and sell gas and oil to Hubbard at the usual wholesale prices, and that Hubbard was to pay Tindall the rent, and at said time Tindall had a contract with the Texas Oil Company for a bonus to be paid under the terms set out in the contract, and nothing was said and no agreement was had between Hubbard and Tindall about any bonus, then in such event it was their duty to find for plaintiff in the full amount sued for. It also refused a peremptory instruction.

The court instructed for the defendant "that the law is that when a tenant rents or leases property from another, such other or one from whom such property is leased is the landlord, and the one renting or leasing from

such person is the tenant, and that in the absence of a contract to the contrary such tenant has all the rights and incidents to said property that the landlord had before and at the time of such renting or leasing.'' It further instructed for the defendant that the defendant was not bound by the books kept by the plaintiff.

The contract, as above stated, was made in the name of the Smith Filling Station, and the check for the bonus was made payable to the Smith Filling Station, and Hubbard operated the business under the name of the Smith Filling Station. However, Hubbard did not keep his bank account under that name, but kept it under his own name and paid to.Tindall direct for oils and gas purchased, and Tindall, in turn, remitted to the Texas Oil Company by his personal check.

We think the question was for the jury, and that there is no reversible error in the instructions, and consequently the judgment must be affirmed.

Affirmed.